Good morning, Your Honors. My name is Peter Scott. I'm here on behalf of Apex Abrasives. May it please the court. Briefly, it might help to understand that the material we're talking about is an industrial garnet. It's used for all kinds of cutting applications. Apex is a mom-and-pop operation that recycles tailings from an old federal site to generate this garnet. Thank you, Your Honor. I'd like to start then talking about the contract interpretation, which I think is the primary issue from which the other errors assigned flow, for the most part. The district court interpreted the contract between the parties as having an unambiguously having no minimum purchase term and made a number of decisions about evidentiary decisions throughout the trial based on that interpretation. He did. Then when he finally wrote up his decision, and I don't know whether there were drafts from the defendants or not, but he also made these findings about modification. Your Honor, I'm not aware of any written decision. The judge made some oral findings about modification, which I'll come to. The principal point about the interpretation issue is that we agree the contract is unambiguous. We believe it unambiguously required the defendant to purchase. As I understand it, the district court also thought the contract was unambiguous. For the opposite reason, Your Honor, which is an interesting dilemma. The court said, there is no minimum purchase term in this agreement. That seems a difficult reading. Sorry, Your Honor? That seems at least a difficult reading. It did to me as well, Your Honor. The contract says that WGI, the defendant in this case, will purchase a minimum. It doesn't say up to. It doesn't say if they feel like it. It says they will purchase a minimum amount, and it specifies tonnage. So if the contract does have a minimum purchase amount, is it your position that issues still remain for trial because there's an argue that it was that conduct modified it? I think that's the issue that could be remaining for trial. Well, you're not arguing that the remedy for us is to order judgment in your favor. You're arguing that you should be able to try your case. That's what we're arguing, Your Honor. On the premise that the contract says what you say it says. Yes, Your Honor. And that it had to be modified. And then if it was modified by performance, but. As I say, I did understand that the, I thought it was in writing, but maybe it wasn't still that the district court did make a modification. I mean, at some point, he kind of shifted over to this notion that, well, maybe it was ambiguous, or even if it was ambiguous. And that's where we think justice was not served, Your Honor, because throughout the presentation of evidence, the court excluded testimony on pre-admitted evidence for claims that are in the final pretrial order, asserting that they were being offered, despite efforts to the contrary, to interpret the contract that he had already ruled contained no minimum purchase term. So as a consequence, a significant amount of evidence was not accepted by the court. It was submitted as an offer of proof, and you have those in the record. The difficulty, though, Your Honor, is when the court got around to talking about modification, what he said is the contract term for purchase minimums might have been interpreted and applied differently, which certainly sounds as though there's some suggestion of ambiguity there. So all of the evidence that was excluded because the court believed it was being offered to interpret the contract, and it was not. I'll come back to that. Well, so, but under your theory, and let's assume we agree with you that the contract contains a minimum purchase term, that evidence would also be irrelevant, wouldn't it? I'm sorry, which evidence, Your Honor? The evidence about the negotiations and everything else. If we held as a matter of law that the contract has a minimum purchase term, then the exclusion of this evidence would be appropriate, would it not? It would not, Your Honor, for two reasons. Under the Mercury Systems case, all of the extrinsic pre-negotiation information comes in to answer the question about whether that contract was later modified by a course of performance. The notion being that you were so adamant about this, why would you have modified it? Is that essentially the reason? Yeah, I would put it more starkly. Okay, it comes under the course of performance issue. That's right. Can I ask you a slightly different question? The district court not only dismissed your contract claims, but dismissed your claims for fraud, negligent risk representation, tortious interference. Let's start with the last one. A party can't tortiously interfere with its own contract, can it? The problem, Your Honor, is that, and the facts underlying it, of course, those are alleged in the complaint. No, I'm just very simple. You sued the other party to a contract and claimed that it tortiously interfered with the contract. It's black letter law that a party can't tortiously interfere with its own contract, correct? My expectation, Your Honor, is that we would have had to make a choice of remedy at some point. Well, you may have had to make a choice of remedy. Was that your argument? I thought your argument on tortious interference was that the tortious interference was with other alternative sales that you could have made because they were spreading these rumors that you couldn't produce and so on. So there were two aspects to that, Your Honor. During the contract term, prior to termination for breach, customers were being told material was not available when it was. After the contract was terminated, by whom? That would lead to Judge Hurwitz's problem, right? Because the customers were not actually their customers. They were customers of the defendant, Your Honor. Of the defendant. The defendant was to purchase the material from WGU. It would have affected the amount of sales they had, but still the contract that was being interfered with was the contract. They didn't have a contract with the customers, right? There's two aspects to this agreement. It's a marketing and sales agreement. WGI was first obligated to purchase a minimum amount. They were secondly obligated then to market that material in a workmanlike manner. Tell me what contract was tortiously interfered with. The contract between WGI and Apex. Okay, and I ask you again then to respond to this. It is the law in Washington, in Montana, I'm sorry, and the law in every place else that I've ever looked at, that one cannot tortiously interfere with a contract to which one is a party. So therefore, didn't the district court correctly dismiss the tortious interference claim? There was no finding as far as I'm concerned, as I can recall, Your Honor. I'm not asking about findings. If your only theory is that they tortiously interfered with their own contract, then surely the district court was correct in dismissing the tortious interference claim. Was it not? I don't believe they were correct because after the contract was terminated and Judge Berzon asked me who terminated, I'd like to get to that as well. No, I didn't ask you that. I mean, what I was saying was that I understood there was a second theory of tortious interference that dealt with the question. Yeah, and then you said to me the only contract that was interfered with was this one. So there may be two theories. Can you identify another contract that you think was tortiously interfered with? Tortious interference with the, not with the contract, with the client. Corrective business advantage is essential. Thank you, Your Honor. I.e. their ability to sell outside this contract. When Apex went to sell the material to existing customers after terminating for breach, then WGI came in and started attempting to undercut and sell in the same place. Is that in your complaint? It is, Your Honor. Because all I see in your complaint is a tortious interference with contract claim. I don't see a tortious interference with prospective advantage or anything else. Well, I'll let the complaint speak for itself. Let me ask you about fraud. What's the evidence of fraud? Well, we need to break this down between pre-contract and post-contract activity. The fraud claim and the negligent misrepresentation claims are based on representations that were made to my client before there was a contract, before there were any commitments to a contract. They were told that the market that WGI works in would absorb up to 20,000 tons of this material. Is that kind of representation, you know, which is, you know, somebody's estimate of a market which you can go and do your own on, the kind that can give rise to a fraud claim? If somebody gives you their opinion of the market and says, I've done research, can you rely on that? Well, Your Honor, this isn't just somebody who went on to Google. This is a company, an international publicly traded company that occupies 10% of the worldwide market. Well, I suppose, I mean, would you have to demonstrate, for example, that they didn't do the research they said they did? Or that the research was, you know, fraudulent research? I mean, what would you have to demonstrate? I mean, if they did the research they said they did, and it in fact showed what they said it showed, but it was wrong, would that be a fraudulent misrepresentation? I don't think under those circumstances, but where they knew the market wasn't going to absorb that amount, where they... So you would have to demonstrate that they either lied about having ascertained this or ascertained it in some, fixed the book, so to speak. And they intended for my client to construct... Do you have any evidence that, or do you allege that they didn't in fact do this research or didn't, or did so in a fraudulent fashion? We allege, I'm not sure that research is the term I would... Well, I gather that what they did is they claimed to have done some market research and found out that there was a market here. They misrepresented the status of the market. And they failed to acknowledge that they were simultaneously working to obtain a contract from another source. They knew that it wouldn't, that they had facts contrary to what they were saying. They knew that if they were able to secure a source from another, this material from another source, they were not going to buy my client. But that's a completely different thing. Yeah, isn't your... I'm sorry. Isn't your remedy for that voiding of the contract? In other words, you're, I think you're saying you'd have to choose remedies, but what you're really saying is that we wouldn't have contracted with them had we known the real truth, right? Yes. Is that a fraud claim that the district court said, what you're really trying to do is take pre-contract negotiations and leverage them into a fraud claim, and you can't do that under Montana law? Was the district court wrong about Montana law? What he said is, I'm not going to allow any information that's offered for the purpose of interpreting a contract that's in writing. Well, but he said more. He said that, he said you can't bring a fraud claim based on pre-contract negotiations. And I disagree with that, Your Honor. The Sherrod case is the one we rely on. It's versus Morris and Knutson. And in the Sherrod case... Well, the exception says it doesn't apply. The exception for all evidence of fraud does not apply when the contract, when the fraud relates directly to the subject of the contract. That's what Sherrod says. Doesn't the fraud relate directly to the subject of the contract? No, it does not, Your Honor. Really? It does not. The contract has nothing to do with the construction and permitting of a mill capable of producing material. But the subject of the contract is the production of, production of the garnet, is it not? The subject of the contract is not production of the garnet. It's the sales of the garnet. Okay, fair enough. If the mill isn't there, there's nothing to sell. They built the mill based on representations made before there was a contract. They spent a million dollars or more of investment capital to prepare a mill. At that point, and of course this is hypothetical, if WGI had walked away and APEX was able then to go find another buyer, we'd have a different set of facts. Are you contending you constructed the mill not in reliance on the contract? There was no contract when the mill was constructed, Your Honor. And so you would... Somebody came to you and said, there's a big market out there. I'm not going to deal with you. I don't have a contract with you. And you constructed a mill on the basis of that representation. And you're claiming that you're entitled to recover for fraud? There was a promise of a contract. They were working together. So it was the promise of the contract that led you to construct the mill, right? It was also the promise of the market. Well, it was the promise or, to be a little more precise, was it the representation essentially that if all went well, they would do this. And there was a risk involved and they might not do it, but you were evaluating that risk based on what they factually told you. That's correct. That's correct, Your Honor. There are other facts. I'm not sure the court wants to go through all the evidence, but... And we're only asking about the tort claims. I mean, this is all... That's where I'm at. WGI said, to be of interest, and I'm paraphrasing the language of the exhibits, this project has to have a net present value of $10 million or more. They then sent a letter that said, we've conducted a viability study. And that's why I was focusing on the study. And the project is viable. Taken to mean it's worth more than $10 million. This is why, to me, whether you have a viable claim turns very much on this viability study. Do you allege that they didn't do the viability study, or that they lied about what it said, or that it was fraudulently conducted, or something like that? We don't know, Your Honor, because after they breached the contract and we terminated, they destroyed all of their records. You may not, but that's your spoliation claim. The problem is the judge granted the 50B motion after some trial and some evidence, and there were some re-judgment motions. So what's your evidence that, to go back to Judge Persaud's question, the, when they gave you that study, they hoked it up. It wasn't true. It wasn't a real study. They just made it up to fool you. The evidence is that prior to the signing of the contract, WGI entered into a contract with a third party. With what? A third party. You've seen the evidence in the record. VV Minerals out of India for 60,000 tons. It turns out they were negotiating with the whole time. No, but is that evidence that the viability study is a fraud? Again, we don't know, Your Honor. Well, but the problem is you don't know. You can argue your spoliation issue. That's separately. But this is not a motion to dismiss. This is a, this is a 50B motion after a motion for summary, after summary judgment. So the question is, what is there in this record that shows us that there was fraud? Um, well, the things that I've identified in the... Let me ask you one, one very short question, technical question. You voluntarily dismissed your tortious interference claim. That's true, Your Honor. So your argument on tortious interference has to be that the district court reinstated it. When the court vacated all prior rulings on all issues... But didn't the district court say it didn't reinstate it? After the fact, Your Honor. Well... I thought it said it not after the fact.  Yeah. Not that I'm aware of, Your Honor. I'm sorry, what? I don't recall that. I don't... Well, I thought it did. And that you didn't really object at that point and then later objected. No, the pre-trial, the final pre-trial order that we went to trial on has a tortious interference claim in it. But your only argument that the tortious interference claim was reinstated is that you think the district court order reinstated it. That's right, Your Honor. And the district court did not interpret its order as so doing. That's right. I'm looking, right? Yes, that's right. And I've run past my time, so... I have one last question and we'll give you a minute to rebuttal. If you won ideally what you want to win, what happens? We have another trial? I think that's what we're facing, Your Honor. It'll be the third preparation for a trial that, as far as I'm concerned, we haven't had yet. Thank you very much. Good morning. I am Marshall Mickelson on behalf of WGI. So can you start with what I think is the 800-pound gorilla in this room? How in the world isn't this contract unambiguous and has... And why doesn't this contract unambiguously have a minimum purchase requirement? I can't read these words any other way. Your Honor, the court, as is its duty under Montana law... Forget that. The question is... Look at these words and tell me why they're not unambiguous. Look at these words and tell us why it means that. I mean, if it's a matter of law, it's a matter of law. We can decide it, too. Sure. And I don't understand you to be defending it. Are you defending it? Are you defending the district court's reading of the contract? Well, I am defending the district court's reading because it's favorable to my client. Oh, well, that's not a way to litigate a case. That's not a great argument. I understand. That's not what you argued below, though. That's not what you told the jury. That's not what you argued below. That's correct. The court interpreted the contract, and he did so based on his understanding of the law as to... Oh, no, I'm not... Look, the district judge did what he was supposed to do. Arc, the question in front of us is whether he got it right. And so you don't have to defend him. OK. Defend the words. The words seem to me to unambiguously require that your client purchase a minimum amount. Now, the contract may have been modified by conduct. There may be all sorts of other excuses. But if I'm starting down this road at step one, can we all agree that the contract unambiguously has a minimum purchase requirement? The only argument that I would make with respect to that, Your Honor, is if you look at Article III of the contract, it's called the mineral distribution rights. And that's the heading. And the way this was set up is you can argue that it's minimum requirements, or you can argue that it's the mineral distribution rights in that the first 5,000 tons of the first year is absolutely the right of WGI. And then they have right of first refusal of any tons after that. And for the second year, it's 10,000. So I think when you look at that language of mineral distribution rights, and then you look at paragraphs 4.3 and 4.4, which set out how this is done, then you can interpret this contract as not a minimum purchase, but what it says, a mineral distribution rights. But it says WGI agrees to purchase. It does, Your Honor. All right. And it's not much of an argument. Okay. Okay. So given that. Yes. Why shouldn't we send this back for a trial on the contract issues? It does seem to me that the judge's argument that it was, judge's conclusion that it was modified by course of conduct is at least open to factual dispute, is it not? We do not believe it is. And here is why. All the undisputed facts in this case demonstrate the course of conduct. And when you look at the UCC and what it says with respect to a course of performance, it is that the agreement of the parties with respect to the transaction involves repeated occasions for performance by parties. So, yeah, I'm familiar with that. But I want to understand what happened here. What happened here is in the first year, you ordered less than the contract requires. And in the second year, we ordered. And in the second year, after you ordered less than what the contract requires, they terminated the contract. That is correct. In complaining to you that they were buying less than you said. I mean, they asserted their right under the contract at that point, yes? Well, that did not occur. I mean, when you look, the evidence that they have argued, that they objected, because one of the keys under the UCC is that the parties must object or have an opportunity to object and object. So the other party, with knowledge of the nature of the performance and an opportunity for objection to it, accepts the performance. They did not object in 2010. That's right. So your entire case is really based on the notion that they didn't object in the first year when you ordered less than you should have. Correct. Okay. And my question is, is that enough? After all, I've got a contract with someone. They don't comply with it the first time through. I say, I'll give them a second chance. But the second chance occurs and they don't comply with it again and I terminate it. That's essentially what happened here. I think it's a little bit more than that because the first year they didn't comply. The first, what we're looking at is that April email, which was excerpt of record page 133. And that is the proof that APEX offered as their objection. So this is in April of the second year. So they didn't comply for year one. This is what I don't understand. I mean, this is a different kind of, I mean, ordinarily I would think that the kind of thing that the UCC rules apply to are things like, you're going to produce widgets in a certain way and the widgets keep arriving. They're not like that. They're in something else. They don't have, they're green, not yellow or something. And you don't say anything about it. But this, I mean, obviously they were sitting, they would have thought, on a right to sue you for noncompliance for not producing, not buying what you were supposed to buy. So why did they have to complain to you that you didn't buy, at least within the statute of limitations? What's the function of a statute of limitations on a contract if you can't sue on it for noncompliance within the limitations period? Because the UCC says that this is what's going to happen between merchants. And it's not just my, the warranty or the, you're talking about warranties. That's the difference. It's not a warranty. It's not the nature of the product. It's an assurance that you're going to buy a certain amount within a certain time period. And you didn't do it. I mean, why do they have to go say to you, you know, you didn't do it. You didn't do it. So what's the problem? Why do they need to complain rather than sue you within the correct statutory time period? Because under the UCC 30-1-205 says that if you are merchants, and there's no question these were both merchants, this is what happens between merchants. And if you follow a repeated occasion of performance that doesn't comply. But it wasn't repeated. That's the point. No. There was one year. And now in the middle of the second year, they complain. The contract anticipated that for year one, you would, that WGI would be buying 100 tons a week. That never happened for 52 weeks. The contract in the second year. They had said a total of 5,000. And now it's the end of the year and they haven't done it. But the contract talks about that it should be evenly spaced. Okay. So if you're evenly spacing that to get 5,000 tons in year one, it's 100 tons a week. We all agree on this. I'm trying to get to the legal principle. Yes. We all agree that your client under a plain reading of the contract breached it. The question is whether or not they had to complain immediately or they could wait a while to see whether or not you would start fulfilling your obligations. And they did the latter. And so the question is whether, and there's no doubt that they did complain at one point. They complained, well. Well, they said, they said, we're terminating a contract because you're not doing what you're supposed to do. Yes. So the question, and so the question is whether or not when that occurred as a matter of law modified the contract. The, the, if the, the undisputed facts here are how they carried this out for a year and a half. No, you're, you're, you're, I don't want, I don't want to tell you to make your argument. I agree about all the undisputed facts. Okay. I'm trying to figure out what the legal consequence of those facts is. And what you're saying is the legal consequence of them not complaining earlier about you not fulfilling the contract is that the contract was modified. Correct. And what was it modified to say? It was modified that there was no minimum requirement. I mean, there are other problems here with regard to what the record is because of the way the record was made, which was on with the district judge having ruled that the contract meant the opposite of what it actually says. And therefore keeping out of the trial record, a lot of facts they wanted to put in. Regarding that might've gone to this question of whether the contract was modified and possibly the pre-negotiation, the pre-contract material. I don't know about that, but also the district judge, as I understand it, refused to let them put in evidence of capacity and then said that they didn't have capacity. There's no question that they didn't have the capacity to produce 10,000 tons. But they said they could have gotten it and he wouldn't let them do that because he kept saying, it doesn't matter, it doesn't matter, this is an unambiguous contract. Well. So he was not letting them try the modification question for most of the trial. And then he ends up ruling on it on a truncated record. Is that unfair? I think what the court did in this case was said to the plaintiff, I interpret the contract this way. But even if I accept what you're saying about the contract is that there was a minimum contract, that the undisputed facts here. That's what he said at the end of the trial, but in the middle of the trial, he kept cutting off the evidence. The evidence that was offered with respect to the non-waiver was the three drafts that were made beforehand. And capacity evidence. And he said, it doesn't matter what your capacity is, what matters is what you produced. And so on. But for waiver, the capacity, I don't believe, Your Honor, is a material fact. Why? Because what you look at is what did the parties do during the time period? And was there an objection? And I go back to this April email that I talked about, where they don't say, you're not producing the minimum, or you're not buying the minimums. They don't say that, why aren't you buying the minimums? What they say is. Which year was that? This is April of 2011. So it's the first quarter of the second year. Give me the record site. It's excerpt of record, page 133. And what Mr. Gene Nelson says is that, obviously, we both agreed that garnet sales of APEX product must be increased for APEX sustainability. But they don't say, so buy your minimums. What they say is, as I explained, we want to be very clear in your suggestion that APEX sell independently of WGI. APEX will find new customers, but we're mindful of the sales agreement between WGI and APEX. The sales agreement specified minimum tonnage of garnet to be bought and sold. APEX has produced garnet product in excess. But accordingly, APEX does expect WGI to make its best effort to sell product. And APEX continues to make its best efforts to supply. So then we have an email in September of 2011, right? Yes. That's the notice of- And your argument that that's too late. Yes. Because we've gone for a year and a half of this period of time, and Gene Nelson testified when he was asked during the trial, you didn't insist on the minimums. Is that correct? And he said, quote, APEX chose not to go down that path. So they chose not in the first year of the contract to complain about it. And look, you may have a great argument on modification. My question is, why is it as a matter of law that it's been modified? Because we don't think that any of the facts are in dispute. And if the facts aren't in dispute, then it is a determination of law. Can I ask you a question along the lines that Judge Berzon asked? I'm a little confused in this case. The district judge granted a 50B motion. Correct. In effect. Did he do it at the close of all the evidence or before all the evidence closed? All of the liability evidence. There was one witness who started testifying on damages only. Okay. So in effect, he did it at the close of the plaintiff's case on liability. Yes. And he asked both sides, are you done with your liability witnesses? And the response was yes. And so then he ruled on the liability. Okay. And now I'm looking backward to things that he excluded from evidence. Were any of the things that he excluded from evidence things that would go to this modification of the contract issue? I don't think. Your colleague says yes, because I can show that we were really adamant that the only reason we would do this is if you would purchase the minimums. And that's in the contract. So if the contract's clear and the minimums are purchased. But the district judge didn't think so. You see, even his findings, it seems to me, even if he was willing to say even if there's ambiguity, but there isn't ambiguity. It's in the other direction. So he didn't give credence even to the notion that they insist to the degree that it's really in the contract. So it seems to me his findings are totally worthless. Do you at least agree with that? His findings with respect to the modification are worthless. No, I don't agree with that. Why? Because I think that the evidence still is in the record. That's a different point. But I'm asking you whether his findings are entitled to any difference. They have to be as a matter of law, don't they? Well, here it's a matter of law if there is no issue of fact. And with respect to the admission of the evidence, that's certainly a discretionary as to whether or not that. It's discretionary if he's ruling on the right premises. But he was ruling on the wrong premises. That's the whole problem here. He was ruling on alternative premises. Well, no, he wasn't for most of the trial. At some point, he seems to have shifted over a bit. But for the most part, he was insisting that you couldn't put on anything that went to the question of whether this contract in fact allowed the behavior that WGI was engaging in because it unambiguously did. That was his premise from day one. And therefore, no evidence was coming in. But he did, even at the first pretrial where he made the initial rulings, discuss modification, and discuss that this contract, even if you accept what plaintiffs were saying, it was modified. Well, I don't think he ever said even if you accept what plaintiffs were saying. He said even if you accept that it's ambiguous. And I don't have the sight to the record. Even if you accept that somebody could read it that way, as opposed to the fact that it unambiguously says that. And it's different. It is different. I'm sorry. I don't have the sight to the record. But what he said was, even if you accept their interpretation of how they want the contract interpreted. I didn't mean it that way. All right. Thank you very much. The time is up. Do you agree that if we thought that, A, the contract is unambiguously the other way, and, B, that sufficiently affected the trial, the nature of the record that the modification decision would have to be made in a different record, that we then send it back for a new trial? Or what do we do at that point? Yes, Your Honor. If you find that there was an error of law here by the district court with respect to the Rule 50B motion, then it would be come back. Which would have to wrap in the question of whether the record was affected. Correct. One last question. Were the judge's ruling, and put citotious interference for a second. Were the judge's rulings on the tort claims just a follow-on from his finding that there was, you know, there wasn't a contract to make minimum purchase? Or did he make a separate analysis of those tort claims? He made a separate analysis. And if I can speak to the court claim. Just briefly. Really, that's all I wanted to know. Okay. All right. Thank you very much. We'll give you a minute in rebuttal, sir. Thank you, Your Honor. What I'd ask the court to look at as well is the evidence pertaining to allegations that the Apex product was having difficulties. They were working continuously with WGI to resolve issues that we believe were not significant and should not have impeded the purchase requirements that are in the contract. So under the Pipe Industries case, there were other reasons for withholding their legal remedy. But the judge didn't find in this case that you couldn't fulfill the contract. There may have been evidence that you couldn't, and that may be a question for the jury. But the judge didn't find that, did he? He did, Your Honor. He said the record was clear that at no time Apex could have produced the material they were required to produce to satisfy the purchase terms. Not because of the quality, I thought, but because of the capacity. Not because of capacity, and we, of course, dispute that. But he did at some point stop you from putting capacity evidence on it. He did. But you then to some degree did, didn't you? The testimony came in, and then he interrupted and said, I'm not going to allow that testimony. I'm trying to figure out whether that's the basis of his ruling as opposed to something he said. Well, we think it's material to the question of whether there's a performance, you know, a modification. The company was ready, willing, and able to perform at all times. They just didn't get purchase orders. And I'd ask you to look at Exhibit 526. I have the record identification number. It's at 168 in the second volume of exhibits. And it's an email that came right at the beginning of the very first contract year. And understand, of course, it's shut down during the winter. The contract year is about five months of production, six months of production. And in that, WGI explains exactly how the process will work. And it coincides perfectly with the agreement. They send a purchase order. My client lets them know when it's ready. They arrange for shipment. They take it away. There's no modification. The evidence, and this wasn't allowed in, and no testimony was allowed on this subject. But paragraph 4.3 of the agreement for shipping coincides and can be read harmoniously with 3.1. They send a purchase order. We fill it. We let them know when it's ready. They arrange to ship it. There was no modification or change. The only thing that happened is my client withheld termination for breach, and it tried to work the contract out.  terminated for breach. Are you contending that there was no modification or change as a matter of law, or that there's a fact question? There is a fact question regarding it. I agree with that, Your Honor. And that the way this case was tried affected the record with regard to those facts, because otherwise we could just decide. Clearly, in our view, we were not able to put on evidence, and we believe a jury should decide whether there was an intentional modification or waiver of these terms. Because if it didn't affect it, we could just decide it as a matter of law now, right? No, it clearly affected the record, Your Honor. Thank you very much. All rise. This court for the discussion stands adjourned.
judges: Thacker, Berzon, Hurwitz